In re R. Herrick ANDREWS, aka Ralph
Andrews, Debtor.

Michael G. YAFFE, M.D. and Marsha S.
Yaffe, Plaintiffs,

v.

R. Herrick ANDREWS and James T.
Eichstaedt, Trustee Defendants.

Bankruptcy No. LA–81–13106(CA).

Adv. No. LA–81–5136(CA).

United States Bankruptcy Court,
C. D. California.

Jan. 5, 1982.

Richard A. Carsel of Carsel & Umhofer, a
Law Corp., San Luis Obispo, Cal., for plaintiffs Michael G. Yaffe, M.D., and Marsha S.
Yaffe.

John R. Read, III, Ventura, Cal., for defendant Ralph Herrick Andrews.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW (Re Order Granting
Relief From Stay)

CALVIN K. ASHLAND, Bankruptcy
Judge.

Evidence, both oral and documentary,
was introduced and the cause was argued
on behalf of all parties and submitted for
decision. The court has considered the evidence, the papers filed in related cases, and
all the pleadings filed by the parties, and
makes its findings of fact as follows:

FINDINGS OF FACT

1. The court has jurisdiction of plaintiff's claim under 11 USC § 362(d). Defendant Andrews is the debtor in Bankruptcy Case # LA–81–13196(CA), now pending
in this district before Calvin K. Ashland,
Bankruptcy Judge.

2. The Yaffes are the holders of a
second deed of trust upon improved real
property located in the City of Oxnard,
County of Ventura, State of California (the
property), described in the trust deed at-

tached to the Yaffes' complaint as Exhibit "A". The owners of record of the property and their respective ownership interests (the record owners) are as follows:

R. Herrick Andrews — an undivided 66⅔% interest;

Herrick John Andrews — an undivided 16⅔% interest;

William Addison Stage III — an undivided 8⅓% interest;

Bruce John Paranay — an undivided 8⅓% interest.

3. On January 16, 1980 a sale of the property was consummated between the Yaffes, as sellers, and the four record owners set forth above, as buyers.

4. In return for their equity interest in the property, the Yaffes received the following consideration from the record owners:

(a) A Ten Thousand Dollar ($10,000.00) cash down payment; and,

(b) A promissory note (hereinafter referred to as "the note") secured by a second deed of trust (hereinafter referred to as "the trust deed" or "the deed of trust") on the property in the face amount of Two Hundred Ninety-One Thousand Five Hundred Fifty-Nine and 12/100 ($291,559.12) Dollars. The note was executed by the four (4) record owners as payors and named the Yaffes as payees. The note provided for two (2) payments: the first, in the amount of One Hundred Forty-Five Thousand Seven Hundred Seventy-Nine and 56/100 ($145,779.56) Dollars, plus accrued interest, was due and payable on January 22, 1981; the second, consisting of the unpaid principal balance (plus accrued interest) was due and payable on January 22, 1982. Interest on the unpaid principal balance ran from the date of execution to the date of full payment at the rate of six (6%) percent per annum. The note is attached to Yaffes' complaint as Exhibit "B".

5. The record owners failed to make the January 22, 1981 payment. They are currently in default on the note.

6. On March 6, 1981 the Yaffes elected to proceed with a nonjudicial foreclosure on the property due to the record owners' default on the January 22, 1981 payment. On that date, a Notice of Default was recorded against all record owners, a true copy of which is attached as an exhibit to the answer filed by Andrews herein.

7. The Notice of Default states on its face that the time period within which the default may be cured is three (3) months from the date of recordation of the notice (e.g., on or before June 15, 1981).

8. The filing of defendant Andrews' Chapter 11 case in this court is but one of many judicial proceedings initiated by the record owners to prevent the Yaffes from foreclosing on their trust deed.

(a) By letter dated June 5, 1981 the then counsel for Andrews and the other record owners stated that unless a settlement was reached by June 8, 1981 one of the record owners (other than Andrews) would initiate a proceeding in the Bankruptcy Court, implicitly for the purpose of halting the pending foreclosure on the property. A copy of that letter is attached to the Yaffes' complaint as Exhibit "C" and was admitted as having been sent in Andrews' answer.

(The following described judicial proceedings are judicially noticeable matters before this court.)

(b) On June 15, 1981 a Chapter 13 "straw man" petition was admittedly filed (per Andrews answer on file herein) by William Addison Stage, one of the minority record owners, in Bankruptcy No. LA–81–7352(CA). On June 23, 1981 pursuant to a duly noticed hearing on a Complaint for Dismissal filed by the Yaffes in Adversary No. LA–81–2647(CA), the Chapter 13 proceeding was dismissed by Judge Calvin K. Ashland because Mr. Stage did not meet the jurisdictional requirements for a Chapter 13 filing.

(c) On June 18, 1981 the record owners filed suit against the Yaffes (et al.) in the Ventura County Superior Court as Case No. 74085 (hereinafter referred to as "the state court suit"). The complaint was captioned "Complaint For Declaratory Relief, To Set Aside Notice of Default Under Deed of

Trust and For An Accounting." A true copy of that complaint is attached as an exhibit to the Answer filed herein by Andrews; it is also attached as an exhibit to the Answer filed by Mr. Stage in a subsequent Chapter 11 proceeding, discussed herein at subparagraph (e).

(d) On June 24, 1981 the record owners attempted to obtain a temporary restraining order in the state court suit to halt the pending foreclosure on the grounds set forth in their complaint. Their request was admittedly denied (per Andrews' Answer) on that date by the Honorable Charles McGrath, Judge of the Ventura County Superior Court.

(e) On July 1, 1981 yet another "straw man" bankruptcy proceeding was admittedly commenced (per Andrews' Answer) by Mr. Stage, one of the minority record owners, in Bankruptcy No. LA–81–08133–CA; this filing was under Chapter 11 of the Code. (Mr. Stage holds an 8⅓% interest in the property as an investor.) On September 14, 1981, pursuant to a duly noticed hearing on a Complaint for Dismissal and/or Relief From Automatic Stay filed by the Yaffes in Adversary No. LA–81–3658–CA, the Yaffes were relieved from the stay against foreclosure imposed on July 1, 1981 by Judge Calvin K. Ashland because Mr. Stage's filing was found to have been in bad faith.

(f) On July 9, 1981, the record owners attempted to obtain a preliminary injunction in the state court suit to halt the pending foreclosure. Their motion was admittedly denied (per Andrews' Answer) on that date by the Honorable Jerome Berenson, Judge of the Ventura County Superior Court.

(g) On October 15, 1981 a Chapter 11 petition was filed by R. Herrick Andrews, aka Ralph Andrews, several hours before the foreclosure sale on the property was scheduled to occur. The Yaffes again filed a Complaint for Dismissal and/or Relief from Automatic Stay to which Andrews filed an Answer. Andrews' Answer relied in part upon alleged defects in the Notice of Default, in the substitution of trustee, and in the execution of the note and trust deed. Those were precisely the same issues unsuccessfully argued previously before Judge McGrath on June 24, 1981 (who denied the requested temporary restraining order), before Judge Berenson on July 9, 1981 (who found there was no basis for injunctive relief), and before Bankruptcy Judge Ashland on September 14, 1981 (who found that Mr. Stage's filing was in bad faith).

9. Attached to Andrews' Answer as an exhibit is an affidavit by William G. Simon. Mr. Simon identified himself as a senior partner in the Los Angeles law firm of Simon & Sheridan, having previously enjoyed a twenty-four (24) year career with the Federal Bureau of Investigation. Mr. Simon stated his firm had represented Andrews on numerous matters for the past nine (9) years. Mr. Simon described, with particularity, specific assets belonging to Andrews with net values in the millions of dollars. He also represented that he could obtain a bank loan for Andrews in a sufficient amount to pay off the trust deed obligation to the Yaffes, as follows:

"4. For approximately the past 30–45 days I have made considerable effort to secure a loan for Ralph Andrews in the amount of $800,000 and have furnished to First Interstate Bank a list of payments to be made from the requested loan. This list includes payment of the trust deed on the Oxnard beach home to Dr. & Mrs. Yaffe." (At p. 2.)

"8. On October 14, 1981, I telephonically conversed with Thomas Hodgins, Vice President, First Interstate Bank, at their main office, 707 Wilshire Boulevard, Los Angeles, California and I informed him of as much information as I had concerning the foreclosure proceedings on the beach house. Mr. Hodgins informed me that upon my request First Interstate Bank would lend me an amount requested by me for as much as $400,000. In the past, I have been loaned sums in excess of this amount by this same bank. I told Mr. Hodgins that Mr. Andrews had informed me that he had $59,000 coming to him from the Yaffes. I told him the

$59,000, deducted from the approximate $325,000 called for by the Notice of Trustees' Sale would involve a payment of about $265,000 to clear the property of the Yaffe trust deed." (At p. 4.)

10. Also attached to Andrews' Answer as an exhibit is an affidavit by Thomas Hodgins dated October 16, 1981. Mr. Hodgins identified himself as the Vice President and senior loan officer of the First Interstate Bank at the main headquarters in Los Angeles. He further stated that he would be willing to loan Mr. Simon the needed funds to pay off the trust deed obligation to the Yaffes, as follows:

"3. Mr. Simon called me on October 14, 1981, and explained to me the problems relating to the trustees sale of the beach house at Oxnard Shores. He inquired as to whether the bank would be willing to grant him a loan of an amount up to $400,000. I told him that the bank would do so." (At p. 1.)

11. Andrews filed a Statement of Net Assets as of January 31, 1981, with the Federal Communications Commission ("FCC") in support of an application for a license to operate a television station. The excess of assets over liabilities was reported to be $8,935,007.00. (These facts are judicially noticed as a part of the FCC's administrative procedure.) A true copy of said statement, consisting of four (4) pages, is marked Exhibit "A", attached hereto and incorporated herein by this reference.

12. Andrews has substantial resources and ample assets which are available as collateral in order to obtain funds so as to satisfy his trust deed obligations to the Yaffes.

13. Under questioning by the Court on November 30, 1981, Counsel for Andrews stated that under the contemplated reorganization plan of Andrews the Yaffes would only receive a small initial payment and thereafter small monthly payments until at least May, 1982.

14. The Yaffes are not in the business of making real estate loans. The note is essentially the only consideration the Yaffes have received for their realty. The note is currently worthless which has seriously affected the Yaffes' cash flow. The failure to pay the note has forced the Yaffes to the brink of financial ruin. They have several large obligations the satisfaction of which are dependent upon the payment from Andrews.

15. Interest accrues on the note to the Yaffes at the rate of six (6%) percent per annum. With the current market rate of interest at eighteen (18%) percent per annum, the record owners will net in excess of Seventeen Thousand ($17,000.00) Dollars simply by having prevented enforcement of the note to date. The record owners have unjustly profited at the expense of the Yaffes.

16. Andrews is an experienced real estate investor. He has had prior experience in Chapter 11 proceedings, in connection with his company, Ralph Andrews Productions, Inc., according to the affidavit of Attorney Simon attached to Andrews' Answer herein.

17. Andrews' Chapter 11 proceeding is primarily motivated by the desire to protect and preserve the low interest rate (6%) on the property as a means of financing the acquisition with a minimum of front money cash. Accordingly, it is not a proceeding within the contemplation, intent, or purpose of Chapter 11 of the Code.

18. Andrews has acted with the intent to take advantage of the Yaffes' exposure to delay, loss, expense, and attrition incident to further prolonged litigation to enforce their rights against the collateral, and has not acted with that candor, frankness, sincerity and willingness to do equity which are the indicia of "good faith".

19. There is neither a going business nor a going concern value to preserve or protect in this case, and the preservation of this speculative venture should not be undertaken at the expense of the Yaffes.

20. Andrews' petition was not filed with a genuine intent and desire to use the provisions of Chapter 11 for its intended purpose, but solely to prevent foreclosure while Andrews created a vehicle for profit through

use of the Yaffes' collateral at low interest not currently available in the real estate market. That is a misuse of the reorganization process. The Code is not to be abused by the extension of its rights and privileges to those not within its contemplation.

The following Conclusions of Law, insofar as they may be considered Findings of Fact, are so found by this Court to be true in all respects.

## CONCLUSIONS OF LAW

1. Because Andrews has net assets in the millions of dollars and has the ability to obtain funds from which to satisfy all of his obligations to the Yaffes, the property sought to be foreclosed upon is not necessary to an effective reorganization.

2. The contemplated reorganization plan does not provide adequate protection to the Yaffes.

3. The primary purpose of Andrews in filing this Chapter 11 case was both to halt the foreclosure against the property by the Yaffes and to take advantage of the low interest rate (6%) on the note. Coupled with the two prior "straw man" bankruptcy filings and the filing of the state court action, this court concludes that Andrews' actions have been and are in bad faith. "Good faith" is an implicit prerequisite to the filing or continuation of a proceeding under Chapter 11 of the Code. Accordingly, the debtor's lack of "good faith" in filing a case under Chapter 11 is "cause", independent of the existence or lack of adequate protection, to vacate the automatic stay under § 362(d)(1).

4. For the foregoing reasons, this court orders that the Yaffes be relieved from the automatic stay previously imposed herein on October 15, 1981, said relief to be effective as of November 30, 1981.

This judgment is based upon separate findings of fact and conclusions of law.

IT IS ORDERED, ADJUDGED AND DECREED:

1. That effective November 30, 1981 plaintiffs Michael G. Yaffe, M.D., and Marsha S. Yaffe are relieved from the automatic stay heretofore imposed on October 15, 1981 pursuant to the provisions of 11 U.S.C. § 362(a).

2. That effective November 30, 1981 the plaintiffs may proceed with their nonjudicial foreclosure against the real property of the defendant presently pending at the San Luis Obispo, California branch of First American Title Insurance Company. The realty is further identified as Lot 29 of Tract No. 1899 in the City of Oxnard, County of Ventura, State of California, as per Map recorded in Book 47 at Page 72 of the Official Records of the Ventura County Recorder.